UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DAVID McKEE and JUDITH McKEE<br><br>Plaintiffs,<br>v.<br><br>PAUL DeJULIIS, CHARLES WILSON, RANDALL GILLESPIE, and EXPANKO CORK COMPANY, INC.<br><br>Defendants. | Civil Action No. 08-CV-740 |
|---|---|

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Defendants Paul DeJuliis, Charles Wilson, Randall Gillespie, and Expanko Cork Company, Inc., through their counsel, hereby respond to the Complaint and aver the following in support thereof.

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Denied. The corresponding paragraph is a conclusion of law to which no response is required. By way of further answer, this action has been properly removed to federal court.

8.  Denied. The corresponding paragraph is a conclusion of law to which no response is required. By way of further answer, this action has been properly removed to federal court.

9.  Denied. The corresponding paragraph is a conclusion of law to which no response is required. By way of further answer, this action has been properly removed to federal court.

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted.

14. Denied. The corresponding paragraph attempts to characterize a written agreement that speaks for itself.

15. Admitted.

16. Denied. The corresponding paragraph attempts to characterize a written agreement that speaks for itself.

17. Denied. The corresponding paragraph attempts to characterize a written agreement that speaks for itself.

18. Denied.

19. Admitted.

20. Admitted.

21. Admitted.

22. Denied. The corresponding paragraph attempts to characterize a written document that speaks for itself.

23. Denied. The corresponding paragraph attempts to characterize a written document that speaks for itself.

24. Admitted.

25. Admitted in part; denied in part. It is admitted that David McKee forwarded a premium payment for insurance coverage for February. The remaining allegations are denied.

26. Denied.

27. Denied.

## COUNT I

28. The foregoing responses are hereby incorporated as if set forth at length herein.

29. Denied. The corresponding paragraph attempts to characterize a written agreement that speaks for itself.

30. Denied. The corresponding paragraph attempts to characterize a written agreement that speaks for itself.

31. Admitted in part; denied in part. It is admitted that Expanko did not pay the Plaintiffs. It is denied that monies are owed because of David McKee's material breach of his obligations.

32. Denied. The corresponding paragraph attempts to characterize a written agreement that speaks for itself.

33. Denied. The corresponding paragraph attempts to characterize a written agreement that speaks for itself.

WHEREFORE, Defendant Paul DeJuliis demands judgment in his favor and against the Plaintiffs with such other and further relief as this court deems appropriate.

## COUNT II

34. The foregoing responses are hereby incorporated as if set forth at length herein.

35. Denied. The corresponding paragraph attempts to characterize a written agreement that speaks for itself.

36. Denied. The corresponding paragraph attempts to characterize a written agreement that speaks for itself.

37. Admitted in part; denied in part. It is admitted that Expanko did not make payments to the Plaintiffs. It is denied that such payments are owed as a result of David McKee's breaching conduct.

38. Denied. The corresponding paragraph is a conclusion of law to which no response is required.

39. Denied. The corresponding paragraph is a conclusion of law to which no response is required.

WHEREFORE, Defendant Charles Wilson demands judgment in his favor and against the Plaintiffs with such other and further relief as this court deems appropriate.

## COUNT III

40. The foregoing responses are hereby incorporated as if set forth at length herein.

41. Denied. The corresponding paragraph attempts to characterize a written agreement that speaks for itself.

42. Denied. The corresponding paragraph attempts to characterize a written agreement that speaks for itself.

43. Admitted in part; denied in part. It is admitted that Expanko did not make payments to the Plaintiffs. It is denied that such payments are owed as a result of David McKee's breaching conduct.

44. Denied. The corresponding paragraph is a conclusion of law to which no response is required.

45. Denied. The corresponding paragraph is a conclusion of law to which no response is required.

WHEREFORE, Defendant Randall Gillespie demands judgment in his favor and against the Plaintiffs with such other and further relief as this court deems appropriate.

## COUNT IV

46. The foregoing responses are hereby incorporated as if set forth at length herein.

47. Denied. The corresponding paragraph attempts to characterize a written agreement that speaks for itself.

48. Admitted in part; denied in part. It is admitted that Expanko did not make payments to the Plaintiffs. It is denied that such payments are owed as a result of David McKee's breaching conduct.

49. Denied. The corresponding paragraph is a conclusion of law to which no response is required.

50. Denied. The corresponding paragraph is a conclusion of law to which no response is required.

WHEREFORE, Defendant Expanko Cork Company, Inc. demands judgment in its favor and against the Plaintiffs with such other and further relief as this court deems appropriate.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

David McKee's violation of the non-competition provision of the Stock Purchase Agreement bars Plaintiffs from recovery.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of waiver.

### FOURTH AFFIRMATIVE DEFENSE

David McKee's failure to disclose his equity position in an Expanko supplier prior to the execution of the Stock Purchase Agreement is a material omission and constitutes a material breach of the non-competition provision.

### COUNTERCLAIM

51. Counterclaim Plaintiffs are Paul DeJuliis, Charles Wilson, Randall Gillespie (the "Management Group") and Expanko Cork Company, Inc. ("Expanko").

52. Counterclaim Defendant is David McKee ("McKee").

53. On or about July 16, 2007 David McKee executed the Stock Purchase Agreement attached to the Complaint as Exhibit "A."

54. The execution of the Stock Purchase Agreement occurred only after protracted negotiations between McKee and the Management Group wherein the parties attempted to arrive at an appropriate value for the company.

55. The Management Group agreed to assume McKee's liabilities and debts and then ultimately agreed to pay McKee $300,000 for the stock and $300,000 over three years structured as a non-competition agreement.

56. The "Covenant Not to Compete" (¶ 7) of the Stock Purchase Agreement is broadly drafted to require McKee to stay clear of the cork industry and Expanko's business interests.

### McKee's Secret Dealings with Portugal Cork Business

57. Unbeknownst to the Management Group, and prior to the execution of the Stock Purchase Agreement, in or around the summer of 2006 McKee was working to gain operational control of an important Expanko supplier, Sociedade Corticeira Robinson Bros., S.A., ("Robinson") located in Portugal.

58. During this same time period McKee was shopping for a buyer of Expanko. Upon information and belief, McKee intended all along to remain active in the cork business even after the sale of his interests.

59. In July 2006 McKee wrote to Robinson and demanded that Robinson recognize Expanko and himself as a creditor. McKee asserted that Robinson owed Expanko (and him) 1,496,393 Euros (approximately $2,215,000) though he had never disclosed this to the Management Group at any time and there was no information on the Expanko books to indicate such a debt.

60. The Management Group was also unaware that McKee personally signed a Sales Agency and Cooperation Agreement ("Cooperation Agreement") with Robinson without offering the opportunity to Expanko or sharing income with

Expanko. A true and correct copy of the Cooperation Agreement is attached hereto as Exhibit "1."

61. Upon information and belief, to the extent that any work was done at all under the Cooperation Agreement it was performed by Expanko employees with no payment ever being received from Robinson. Nonetheless, McKee executed the Cooperation Agreement in his personal name with the intent to deprive Expanko of any rightful compensation.

62. Despite Expanko's ongoing bankruptcy proceedings which included McKee's personal guaranty of debts, no mention was ever made of the Robinson receivable to the Management Group, the Bankruptcy Court or Expanko's banking institution which held the personal guarantees of both Mckee and his wife Judith McKee.

63. In September 2006 Robinson filed a plan of liquidation in the courts of Portugal which identified McKee as a principal creditor who was owed 2,190,783.56 Euros (approximately $3,242,000).

64. Upon information and belief, as a principal creditor, McKee has exerted his influence over Robinson and was rewarded with a large equity position in the company and/or an affiliated or successor entity. Such a position should have properly belonged to Expanko, and/or disclosed as part of Expanko's bankruptcy estate.

65. Upon information and belief, by the end of 2006 McKee's position in Robinson and/or an affiliated or successor entity allowed him to influence price

terms and supply agreements and other management decisions with affected distributors like Expanko.

66. None of this activity was disclosed to the Management Group as it continued to have on-going negotiations for the purchase of Expanko. Had the Management Group known of McKee's secretive and questionable conduct it would not have agreed to assume his debts or executed the Stock Purchase Agreement with the generous payment structure contained therein.

67. At the time that McKee signed the Stock Purchase Agreement and agreed to be bound by the covenant not-to compete he already possessed a dominant shareholder position in Robinson and/or an affiliated or successor entity but never mentioned this to the Management Group who relied upon McKee's representation that he was leaving the cork industry for a minimum of three years and more likely, forever.

68. After executing the Stock Purchase Agreement Expanko, through the Management Group, attempted to continue its relationship with its Portugal supplier. Inexplicably, the Robinson-Expanko relationship took an abrupt and aggressive turn. Robinson demanded more sales volume from Expanko but became non-responsive to fulfilling Expanko orders; shipments were delayed; Robinson notified Expanko of anticipated price increases; and Robinson mishandled deliveries.

69. As a result of Robinson's unpredictable and unreliable conduct, Expanko was forced to find an alternative to its heretofore critical Portugal supplier. During the transition to an alternative, Expanko struggled to provide sufficient quality product for its customers.

70. Expanko infers, upon information and belief, that McKee's actions through Robinson are only a part of his elaborate scheme to undermine Expanko's business and to benefit his son's competing operation.

## COUNT I

## DECLARATORY JUDGMENT

**(DeJuliis, Wilson, Gillespie, and Expanko v. David McKee and Judith McKee)**

71. The foregoing allegations are hereby incorporated as if set forth at length herein.

72. This Court is authorized to enter declaratory judgment under 28 USCS § 2201.

73. As set forth more fully above, McKee's conduct constitutes a material breach of the "Covenant Not to Compete" contained in the Stock Purchase Agreement.

74. As a result of McKee's breach of the covenant, the Management Group is entitled to reimbursement for all payments made under the "Covenant Not to Compete" and is further relieved from the obligation to make any future payment under the Stock Purchase Agreement.

75. The Management Group is entitled to a declaratory judgment which establishes that McKee's breach of contract entitles the Management Group to reimbursement for all payments made under the "Covenant Not to Compete" and is further relieved from the obligation to make any future payment under the Stock Purchase Agreement.

76. As a result of McKee's breach of the covenant, Expanko is entitled to reimbursement for all premium payments made for Judith McKee's health insurance and is further relieved from any obligation to make premium payments in the future.

77. Expanko is entitled to a declaratory judgment which establishes that McKee's breach of contract entitles Expanko to reimbursement for all premium payments made for Judith McKee's health insurance and is further relieved from any obligation to make premium payments in the future.

WHEREFORE, Counterclaim plaintiffs Paul DeJuliis, Charles Wilson, Randall Gillespie and Expanko respectfully request that this Court enter a Order declaring David McKee in breach of the "Covenant Not to Compete;" ordering counterclaim defendants David and Judith McKee to return all monies paid in consideration of the covenant; and declaring that counterclaim plaintiffs have no future obligation to pay monies as a result of David McKee's breach with such other and further relief as this Court deems appropriate.

## COUNT II

### FRAUDULENT MISREPRESENTATION AND/OR INTENTIONAL NON-DISCLOSURE OF A MATERIAL FACT

**(DeJuliis, Wilson and Gillespie v. David McKee)**

78. The foregoing allegations are hereby incorporated as if set forth at length herein.

79. As more fully set forth above, at the time that the parties entered into the Stock Purchase Agreement, McKee had already engaged in a clandestine plan to remain in the tile and cork flooring industry through his dealings with Robinson and/or an affiliated entity.

80. McKee intentionally withheld his Robinson activity from the Management Group, the Bankruptcy Court and others during their negotiations and leading to the execution of the Stock Purchase Agreement.

81. McKee deceived the Management Group knowing that if he divulged his true competitive intent the Buyers would not be willing to pay $600,000 for stock and other compensation for the business.

82. The Management Group justifiably relied on McKee's representation that he would not engage in competitive activities, as defined under the non-compete provision of the Stock Purchase Agreement.

83. The Management Group did not have knowledge of McKee's Robinson related activities.

84. Had the Management Group known of McKee's Robinson related activities they would not have entered the Stock Purchase Agreement.

85. As a result of McKee's deceptive conduct and/or omission of the material fact of his involvement with Robinson, the Management Group has been substantially harmed by over-paying for the business that has a greatly diminished value.

86. McKee's conduct was so outrageous that it warrants the imposition of punitive damages.

WHEREFORE, Counterclaim plaintiffs Paul DeJuliis, Charles Wilson, Randall Gillespie and Expanko Cork Company, Inc. demand judgment in their favor and against counterclaim defendant David McKee in an amount in excess of $300,000, punitive damages, interest, costs and such other and further relief as this court deems appropriate.

## COUNT III

## BREACH OF FIDUCIARY DUTY

### (Expanko v. David McKee)

87.  The foregoing allegations are hereby incorporated as if set forth at length herein.

88.  As set forth above up until January 2007 McKee served as Chairman or President and then Chairman of Expanko.

89.  At all times leading up to his sale of stock McKee had a fiduciary duty to Expanko as a corporate officer and/or director.

90.  McKee breached his fiduciary duty to Expanko by utilizing Expanko employees to perform services for Robinson without properly compensating Expanko.

91.  McKee further breached his fiduciary duty by keeping the Robinson business for himself rather than giving the opportunity to Expanko.

92.  As a result of McKee's conduct Expanko suffered significant harm by being deprived the opportunity and compensation from Robinson.

93.  In addition, McKee unjustly gained enrichment as a result of McKee's involvement with Robinson.

94. McKee's actions are so outrageous that they warrant the imposition of punitive damages.

WHEREFORE, Counterclaim plaintiff Expanko Cork Company, Inc. demands judgment in its favor and against counterclaim defendant David McKee in an amount in excess of $1,000,000, punitive damages, interest, costs and such other and further relief as this court deems appropriate.

## COUNT IV

## CONVERSION

### (Expanko v. David McKee)

95. The foregoing allegations are hereby incorporated as if set forth at length herein.

96. As more fully set forth above, McKee improperly deprived Expanko of a significant account receivable from Robinson.

97. McKee deprived Expanko of its right to assert its claim to the Robinson debt without consent and without lawful justification.

98. McKee acquired possession of Expanko's receivable with the intent to utilize same for his own benefit and to the detriment of Expanko.

99. McKee's conversion of Expanko's receivable was willful, wanton, and in reckless disregard to Plaintiff's property rights.

WHEREFORE, counterclaim plaintiff Expanko Cork Company, Inc. demands judgment in its favor and against defendant David McKee together with compensatory and punitive damages in an amount exceeding $1,000,000, a writ of seizure, the

imposition of a constructive trust, an equitable account, and such other relief as this court deems just under the circumstances.

## COUNT V

## USURPATION OF CORPORATE OPPORTUNITY

### (Expanko v. David McKee)

100. The foregoing allegations are hereby incorporated as if set forth at length herein.

101. As set forth above up until January 2007 McKee served as President and then Chairman of Expanko.

102. At all times leading up to his sale of stock McKee had a fiduciary duty to Expanko.

103. McKee did not inform the Expanko Management Group of the potential business opportunity with Robinson.

104. The Management Group did not consent to McKee's seizure of the corporate opportunity.

105. McKee breached his fiduciary duty by keeping the Robinson business for himself rather than notifying the Management Group of the potential corporate opportunity.

106. As a result of McKee's conduct Expanko suffered significant harm by being deprived the corporate opportunity and compensation from Robinson.

107. In addition, McKee benefited from the breach of his fiduciary duties in that he unjustly gained enrichment through his involvement with Robinson.

108. Expanko is entitled to any and all profits which McKee became entitled to due to his involvement with Robinson.

109. McKee's actions are so outrageous that they warrant the imposition of punitive damages.

WHEREFORE, Counterclaim plaintiff Expanko Cork Company, Inc. demands judgment in its favor and against counterclaim defendant David McKee in an amount in excess of $1,000,000, punitive damages, interest, costs and such other and further relief as this court deems appropriate.

HALBERSTADT CURLEY, LLC

By: __/s_____
    Charles V. Curley
    Scott M. Rothman
    Attorney I.D. Nos. 60486 / 201478
    1100 E. Hector Street, Suite 425
    Conshohocken, PA 19428
    610 834 8819 (phone)
    610 834 8813 (fax)
    ccurley@halcur.com
    srothman@halcur.com
    *Attorneys for Defendants*

Date: February 29, 2008



*Sales Agency Agreement*
*— Signed 10 yrs ago*

# THIS SALES AGENCY AND COOPERATION AGREEMENT IS CONCLUDED AND MUTUALLY AGREED BY AND BETWEEN:

1st – "Sociedade Corticeira Robinson Bros, S. A." a corporation organised and existing under the laws of the Portuguese Republic/ Public Limited Company, with its head office located at Largo do Jardim Operário, No 5, freguesia da Sé, in Portalegre, Legal person No 500.265.879, represented by its Legal representative, hereinafter referred to as the **First Party**.

2nd Mr. David Mckee, married, businessman, with its head office located at Expanko,........., USA, hereinafter referred to as the **Second Party**.

*1139 Phoenixville Pike*
*West Chester, PA 19380*
*U.S.A.*

### Recitals

The parties recite and declare:

**I – The First Party**, is an industrial production company of agglomerated cork panels and its derivatives, in particular to sell and export, it owns the registered trademark "**Robinson**".

**II – The Second Party**, imports, markets and distributes to USA and behaviour markets, agglomerated cork panels and its derivatives.


EXHIBIT 1

1



**III** – The First Party, whereas the present distribution of the share capital of the company, and the consequent replacement of its Board members, intends to develop and stimulate its sales in USA and behaviour markets, where the Second Party holds a privileged position in selling agglomerated cork panels and its derivatives. However, bearing in mind the First Party's financial position, this hasn't the economic ability to do so. Both Parties in exchange of exclusive supply to the Second Party agree it as follows:

a) The Second Party, shall carry on hereafter, at his own expense, the promotion and advertising of the products and the Trademark "**Robinson**", by marketing and advertising campaigns, catalogues publishing, promotional events, industrial, market and other shows, whether in USA or in the closest countries;

b) In consideration, the First Party, and as it is common use in the international market, shall engage to contribute to such activities and events with a annual commission of 30 000 000$ (thirty million of escudos).

**IV** – The term of this agreement shall be for 2 (two) years, commencing on the 1st January of 1996, and terminating on the 31st December of 1998. Thereafter, this Agreement shall automatically renew for successive periods of 2 (two) years each unless agreed otherwise, but always pursuant to the terms hereof, and shall be valid while it contains the entire understanding and agreement between Parties.

2

**ROBINSON**

V – However, this Agreement may be terminated since either party gives written notice that it does not wish to renew. Either party may terminate this Agreement upon written notice to the other Party upon the occurrence of the following event: either Party defaults and the other Party denounces the facts within 30(thirty) days notice.

VI – Any and all legal actions relative hereto shall be held in arbitration court, under the laws in force, in Portugal, the First and Second Party shall compromise and compel to accept the verdict under the laws of voluntary jurisdiction/ out of court jurisdiction proceedings in accordance with the Constitution of the Portuguese Republic and in the code of civil procedure.

VII – This agreement shall be construed and enforced in accordance with the laws of the Portuguese Republic.

This Agreement was written in three written pages, on one side, made in three copies, at the head office of the **First Party** and on the 29th December of 1995, read out loud, signed and certified with the print name, by the **Parties'** legal representatives that initialled the first and second page and made unusable the opposite pages.

**First Party:**


**Second Party:**

*[signature]*

3

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID McKEE and JUDITH McKEE<br><br>Plaintiffs,<br><br>v.<br><br>PAUL DeJULIIS, CHARLES WILSON, RANDALL GILLESPIE, and EXPANKO CORK COMPANY, INC.<br><br>Defendants. | Civil Action No. 08-CV-740 |

### CERTIFICATE OF SERVICE

I, Charles V. Curley, hereby certify that I served a true and correct copy of the Answer and Affirmative Defenses in the above-captioned action by first class U.S. Mail, postage prepaid, on the following:

> Nancy J. Glidden, Esquire
> Unruh, Turner, Burke & Frees, P.C.
> P.O. Box 515
> West Chester, PA 19381-0515

> HALBERSTADT CURLEY, LLC
>
> By: /s
>     Charles V. Curley
>     Scott M. Rothman
>     Attorney I.D. Nos. 60486 / 201478
>     1100 E. Hector Street, Suite 425
>     Conshohocken, PA 19428
>     610 834 8819 (phone)
>     610 834 8813 (fax)
>     ccurley@halcur.com
>     srothman@halcur.com
>     *Attorneys for Defendants*

Date: February 29, 2008