IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID McKEE and JUDITH McKEE | : | |
| PLAINTIFFS, | : | |
| vs. | : | CIVIL ACTION NO. |
| PAUL DEJULIIS, CHARLES WILSON, RANDALL GILLESPIE, AND EXPANKO CORK COMPANY, INC. | : | 08-CV-00740-JP |
| DEFENDANTS. | : | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT

COME NOW, the Plaintiffs, David and Judith McKee (the "McKees") and in support of their Motion to Enforce Settlement file this Memorandum of Law.

## I.    INTRODUCTION

This matter comes before the Court on a Motion to Enforce Settlement filed by the McKees. The Motion is narrow in scope, and seeks the Court's intervention to enforce the settlement only as it concerns Defendant, Charles Wilson ("Wilson"). Defendants, Paul DeJuliis ("DeJuliis"), Randall Gillespie ("Gillespie") and Expanko are all signatories to the Settlement Agreement, and they have been performing in accordance with the terms contained in the Settlement Agreement. Because at all times relevant Charles V. Curley, Esquire was vested with the authority to act on behalf of Charles Wilson, this Court should enter an Order enforcing the settlement as to Wilson.

## II.   RELEVANT FACTS

### A.   The Underlying Cause of Action

This is a commercial dispute involving a covenant not to compete. David McKee was the owner of Expanko, Cork Company, Inc. ("Expanko").   By a series of agreements, the first of which was executed on January 24, 2007, McKee agreed to sell Expanko to DeJuliis, Wilson, and Gillespie. The last agreement executed to complete the sale was a Stock Purchase Agreement, which all the parties signed on July 16, 2007.

The Stock Purchase Agreement contained a covenant not to compete which provided for monthly payments in the amount of $8,333.00 to be paid to David McKee, provided he did not compete with Expanko on a global basis for a period of three (3) years.[1]   Closing occurred on August 22, 2007. Non-compete payments were thereafter paid to the McKees for September, October and November. However, by letter dated December 17, 2007, DeJuliis advised the McKees that no further non-compete payments would be made due to a belief that David McKee had breached the covenant.[2]   In response, on January 24, 2008, the McKees filed suit alleging that the suspension of the non-compete payments constituted a breach of the Stock Purchase Agreement.

### B.   The Settlement Conference & Settlement Agreement

After suit was filed, and during the pretrial conference with the Court, the feasibility of referring the matter to a magistrate for a settlement conference was discussed.   Thereafter, the parties advised the Court that a settlement conference would

---

[1] It also provided that Expanko would maintain Judith McKee's health insurance at its expense during the three (3) year covenant period.

[2] The letter also stated that Judith McKee's health insurance would be maintained but only if the cost was borne by the McKees.

be beneficial, and the Court referred the matter to Magistrate Judge Thomas J. Rueter. A settlement conference was scheduled for September 9, 2008.

Prior to the settlement conference, by email dated July 30, 2008, and by follow-up letter dated August 29, 2008, counsel for the McKees, Nancy J. Glidden, Esquire, wrote to Mr. Curley to confirm that he still represented all four defendants, and that DeJuliis would be present and he was authorized to settle on behalf of Expanko. Ms. Glidden also asked whether Gillespie and Wilson would be participating in the conference, or whether Mr. Curley and/or DeJuliis had authority to settle on behalf of Gillespie and Wilson. In response, Mr. Curley confirmed with Ms. Glidden that he continued to represent all four defendants and that he and/or DeJuliis had settlement authority for all four defendants. A similar representation was made by Mr. Curley during the settlement conference.

The conference proved successful and ended with an agreement which was thereafter reduced to writing in the form of the Settlement Agreement.

The Settlement Agreement was drafted and circulated to the parties for signature. It was signed by the McKees on September 22, 2008, and by email dated September 22, 2008, Mr. Curley forwarded the signature pages executed by Gillespie and by DeJuliis personally and on behalf of Expanko. The only missing signature was Wilson's, as to which Mr. Curley stated he was "following up."

### C.   Wilson Refuses to Sign the Settlement Agreement

At some point in time it appears a dispute arose between Wilson and DeJuliis and Gillespie over their respective business interests in Expanko. It is believed that Wilson became estranged from the company and Co-Defendants DeJuliis and Gillespie. Wilson retained George C. Zumbano, Esquire to represent him in his dispute with DeJuliis and

3

Gillespie.   Though it was factually distinct, and not linked to his dispute with DeJuliis and Gillespie, Wilson nevertheless refused to sign the Settlement Agreement.

Magistrate Judge Rueter retained jurisdiction over the settlement that had been crafted at the September 9, 2008, settlement conference.   On November 5, 2008, Mr. Curley wrote a letter to Magistrate Judge Rueter, in which he requested "Your Honor's assistance with securing individual defendant Charles Wilson's signature on the final settlement agreement in this matter."  A copy of Mr. Curley's letter is attached hereto as Exhibit "A."   In his letter Mr. Curley went on to state that,

> Prior to the conference I wrote to each of the individual defendants to ensure that each was "on board" with the settlement strategy and to offer that they be separately represented. Mr. Wilson called me after receiving the letter and we discussed the litigation at some length.  In fact just about a week before the conference Mr. Wilson called me again to discuss the strategy and he fully consented to my continued representation and permitted Expanko's President Paul DeJuliis to appear and bind the company and the individuals to a settlement.

*See, Exhibit "A"* attached hereto.  Mr. Curley further stated that he had "full authority from all of my clients prior to engaging in the conference before the Court."  See, *Exhibit "A"* attached hereto.  Finally, Mr. Curley explained that after the settlement conference he discussed the settlement with Wilson and, "he never once indicated any reservation or objection to the agreement."  See, *Exhibit "A"* attached hereto.

After receiving Mr. Curley's request for assistance, Magistrate Judge Rueter convened a telephone conference in which all counsel for the parties participated, and the matter of Wilson's signature was discussed.   During the telephone conference Mr. Curley reiterated how in advance of the September 9, 2008, settlement conference he had discussed the conference with Wilson and he in fact received Wilson's settlement

authority.    Mr. Zumbano disputed Mr. Curley's account of his dealings with Wilson. Mr. Zumbano and Mr. Curley asked and received an extension of time from Magistrate Judge Rueter so that they could try and work the matter out.

On December 5, 2008, the Court issued an Order which specified a date certain by which the matter needed to be resolved or further proceedings commenced.   On December 15, 2008, with regard to the status of Wilson's signature, Mr. Curley advised the Court by letter in relevant part:

> [T]he defendants have made considerable progress on
> resolving the issue.  Charles Wilson's personal counsel, George
> Zumbano, has just notified me that Mr. Wilson has agreed to sign
> the settlement agreement as part of a settlement of an unrelated
> matter.

Mr. Curley further stated that additional time was needed to draft the papers in the unrelated settlement, and he sought and received a two week extension of the deadline contained in the Court's December 5, 2008, Order.  In his letter to the Court, Mr. Curley concluded that, "[i]t is anticipated that in the interim, Charles Wilson will be executing the settlement agreement and the Motion (*ie.* to enforce settlement) will not be necessary."  See, *Motion; Exhibit "A."*

By email dated December 23, 2008, transmitted to Ms. Glidden and Mr. Curley, Mr. Zumbano wrote in relevant part:

> My client, Charles Wilson, will be signing the Settlement
> Agreement in conjunction with Gillespie and DeJuliis
> agreeing to indemnify Wilson.  We are awaiting the
> indemnification and when received I will pdf to all a copy
> of the signature page, signed by Chuck... I hope to have
> this done in next business day or two.

See, *Motion; Exhibit "B."*

When the signature page was still not received, Ms. Glidden followed up with Mr. Zumbano and Mr. Curley, at which time it became clear that Wilson's dispute with DeJuliis and Gillespie was still unresolved, as was the issue of Wilson's signature on the Settlement Agreement. Ms. Glidden advised Mssrs. Curley and Zumbano that a Motion to Enforce Settlement would be filed if Wilson's signature page was not provided by January 9, 2009.

On January 9, 2009, with no further contact from Mssrs. Curley or Zumbano, and without receipt of Wilson's signature page, the Motion to Enforce Settlement was filed.

## III.   **AUTHORITY**

This matter was removed to Federal Court from the Chester County Court of Common Pleas on the basis of diversity. The validity of a settlement agreement in a diversity case is determined by state law. *Trout v. The Milton S. Hershey Medical Center*, 572 F. Supp. 2d 591, 596 (M.D., Pa., 2008) Pennsylvania has a strong public policy that favors the settlement of disputes and enforcement of settlement agreements. *Id.*, citing, *Compu Forms Control, Inc. v. Altus Group*, 574 A. 2d 618, 624 (Pa. Super. 1990).

A motion to enforce settlement, asks a court to determine whether an agreement has been formed and/or whether the parties have manifested an intention to be bound. *Channel Home Centers v. Grossman*, 795 F. 2d 291, 298-299 (3d Cir., 1986). The process used for determining a motion to enforce settlement is similar to determining a motion for summary judgment. *Tiernan V. Devoe*, 923 F. 2d 1024 (3d Cir., 1991). Whether or not an evidentiary hearing is required depends upon whether disputed

questions of fact or issues of credibility are present. *Garabedian v. Allstates Engineering Co.*, 811 F. 2d 802, 803 (3d Cir., 1987)

In instances where an attorney enters into a settlement on his client's behalf, the attorney must have the client's express authority to do so. *Reutzel v. Douglas*, 870 A. 2d 787, 789-790 (Pa., 2005).

In instances where a non-attorney enters into a settlement agreement, the authority to so act can be direct or apparent. The latter is present when, "there has been a manifestation of an agent's authority by a principal, and a third party's belief that an agent is authorized is traceable to [that] manifestation." *William B. Tanner Co., Inc. v. W100, Inc.*, 528 F. 2d 262, 265 (3d. Cir., 1975). By way of example, a manifestation can be "permitting the agent to serve as the third party's exclusive channel of communication to the principal." See, *Restatement (Third) of Agency (2006) Comment b to Section 3.03.* Courts will also look at whether "a man of ordinary prudence, diligence and discretion would have the right to believe and would actually believe that the agent possessed the authority he purported to exercise." *Universal Computer Sys., Inc. v. Med. Svcs. Ass'n of Pa.*, 628 F. 2d 820, 823 (3d Cir. 1980). A third party is not charged with the responsibility "to inquire into the existence of undisclosed limits on an agent's authority." *Restatement (Third) of Agency (2006) Comment b to Section 3.03.*

## IV.   ARGUMENT

In this instance there is no dispute about whether a valid settlement exists; all parties agree that a settlement agreement was formed. Rather, the issue is whether, Mr. Curley and/or DeJuliis were authorized to enter into the settlement on Wilson's behalf.

It is the position of the McKees that Mr. Curley and/or DeJuliis were so authorized and this Court should therefore enforce the settlement as to Wilson.

As stated above, when counsel for the McKees learned that Mr. Curley and DeJuliis would be attending the September 9, 2008, settlement conference before Magistrate Judge Rueter, counsel inquired of Mr. Curley whether he and/or DeJuliis had authority to settle on behalf of the two defendants that would not be in attendance (*ie.* Gillespie and Wilson). Mr. Curley advised that he and/or DeJuliis had authority to settle for Gillespie and Wilson. The McKees and their counsel participated in the settlement conference only after having received assurances from Mr. Curley that he continued to represent all four defendants, and that he and/or DeJuliis had settlement authority for Wilson and Gillespie. Given the specific representations that were made, it was reasonable for the McKee's counsel to believe that Wilson had given his settlement authority to Mr. Curley and/or DeJuliis, because had it been otherwise, Wilson would have attended the settlement conference to personally represent his interests.

Mr. Curley has consistently maintained that he in fact had authority to settle on behalf of Wilson, as did DeJuliis. Indeed, Mr. Curley has represented to the Court the process he went through to obtain Wilson's authority. Mr. Curley specifically stated that he had consulted with Wilson about the settlement strategy and he confirmed that he still represented Wilson and that he and DeJuliis had authority to enter into a settlement on Wilson's behalf. See, *Exhibit "A"* attached hereto.

Temporally, it is important to note that Wilson's problems with settlement authority surfaced only after he became embroiled in a dispute with DeJuliis and Gillespie – a dispute that has absolutely nothing to do with the McKees or this action.

Clearly, Wilson is now questioning settlement authority and withholding his signature on the Settlement Agreement in order to exact concessions from DeJuliis and Gillespie in the ongoing dispute Wilson has with them.

## V.   **CONCLUSION**

Mr. Curley represented to the Court and counsel that he and/or DeJuliis had full settlement authority to act on behalf of Wilson (and Gillespie). He has not waivered from this position. A settlement was crafted and agreed to and should be enforced according to its terms and Charles Wilson, having authorized his counsel and/or DeJuliis to act on his behalf, should be bound thereby.

Respectfully submitted,

David and Judith McKee, Plaintiffs

Date: 1/12/09                    By: _____
                                    Nancy J. Glidden

# EXHIBIT "A"

PENNSYLVANIA ♦ NEW JERSEY

# HALBERSTADT CURLEY

ATTORNEYS AT LAW

November 5, 2008

*Via facsimile*
Honorable Thomas J. Rueter
Judge, United States District Court
   for the Eastern District of Pennsylvania
11614 United States Courthouse
601 Market Street
Philadelphia, PA 19106

Re:    **McKee et al v. DeJuliis et al**
       **USDC EDPA – No. 08-cv-740**

Dear Judge Rueter:

This is to request Your Honor's assistance with securing individual defendant Charles
Wilson's signature on the final settlement agreement in this matter. As you may recall,
the undersigned appeared at the September 9, 2008 conference as counsel of record for
the corporate defendant as well as the three individual defendants. With the Court's
guidance we were able to arrive at compromise and then left to draft and sign a
Settlement Agreement reflecting the deal. After some continued negotiation counsel
arrived at an agreeable document that was circulated for signature. All parties have
signed the document with the exception of Mr. Wilson. After weeks of requesting his
cooperation, Mr. Wilson's separate counsel, George Zumbano asserted that Mr. Wilson
would not sign.

What Your Honor is unaware of is that prior to the conference I wrote to each of the
individual defendants to ensure that each was "on board" with the settlement strategy and
to offer that they be separately represented. Mr. Wilson called me after receiving the
letter and we discussed the litigation at some length. In fact, just about a week before the
conference Mr. Wilson called me again to discuss the strategy and he fully consented to
my continued representation and permitted Expanko's President Paul DeJuliis to appear
and bind the company and the individuals to a settlement.

Now, in what can only be described as a stunt to gain some leverage in a dispute among
Mr. Wilson and his fellow shareholders in Expanko, Mr. Wilson has indicated that he will

HALBERSTADT CURLEY LLC
1100 E. Hector Street
Suite 425
Conshohocken, PA 19428
TEL. 610.834.8819
FAX 610.834.8813
WWW.HALCUR.COM

Honorable Thomas J. Rueter
November 5, 2008
Page 2 of 2

not sign the agreement. Judge Dubois has recently entered an order demanding some explanation and status as to the execution and dismissal of the case by November 20, 2008.

I am prepared to engage in a conference and/or provide testimony if necessary to establish that I had <u>full</u> authority from all of my clients prior to engaging in the conference before the Court. Indeed, as Mr. Wilson is well aware we discussed the settlement result immediately after the conference and he never once indicated any reservation or objection to the agreement. I regret taking up the Court's time with this matter but there appears to be little else that can be done. Thank you for your attention to this matter.

Respectfully yours,

HALBERSTADT CURLEY LLC

By:
_____
Charles V. Curley

CVC/me

cc:     Donald C. Turner, Esquire
        Nancy J. Glidden, Esquire
        George Zumbano, Esquire

3890

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID McKEE and JUDITH McKEE | : | |
| PLAINTIFFS, | : | |
| vs. | : | CIVIL ACTION NO. |
| PAUL DEJULIIS, CHARLES  WILSON, RANDALL GILLESPIE, AND EXPANKO CORK COMPANY, INC. | : | 08-CV-00740 |
| DEFENDANTS. | : | |

## CERTIFICATE OF SERVICE

I, Nancy J. Glidden, certify that on January 12, 2009, a copy of Plaintiffs'
Memorandum in Support of the Motion to Enforce Settlement was served by First Class
Mail, with proper postage prepaid upon:

Charles V. Curley, Esquire
Halberstadt Curley LLC
1100 E. Hector Street, Suite 425
Conshohocken, PA  19428

George C. Zumbano, Esquire
Gawthrop Greenwood PC
17 East Gay Street
West Chester, PA  19380

Nancy J. Glidden, Esquire
UNRUH, TURNER, BURKE & FREES, P.C.
P.O. Box 515
West Chester, PA 19381-0515
610.692.1371
nglidden@utbf.com